UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENNIS ALLEN TONN,

    Plaintiff,

v.                                                                  Case No. 23-C-555

SCOTT ANDERSON, et al.,

    Defendants.

## DECISION AND ORDER

Plaintiff Dennis Allen Tonn, who is representing himself, is proceeding on an Eighth Amendment deliberate indifference claim against Defendants Scott Anderson, Todd Waege, James Chinavare, Stephen McCullen, James Hawlish, and Brian Burgoon. Dkt. Nos. 13 & 22. On September 11, 2023, Defendants filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies prior to bringing this lawsuit. Dkt. No. 17. On December 11, 2023, Plaintiff filed a motion for summary judgment on the merits. Dkt. No. 32. Because the undisputed facts show that Plaintiff did not complete the exhaustion process by appealing inmate complaint #RCI-2023-1253 to the Corrections Complaint Examiner (CCE), the Court will grant Defendants' motion for summary judgment based on failure to exhaust administrative remedies, deny as moot Plaintiff's motion for summary judgment on the merits, and dismiss this case without prejudice.

## UNDISPUTED FACTS

In this lawsuit, Plaintiff alleges that Correctional Officer (CO) Anderson, CO Waege, CO Chinavare, CO Hawlish, CO Burgoon, and on-call Nurse McCullen were deliberately indifferent

towards his severe pain when they made him wait five hours to see Health Service Unit (HSU) staff at the Racine Correctional Institution after he slipped and fell on "snow covered ice" on December 23, 2022. *See* Dkt. Nos. 13 & 22. Plaintiff filed two inmate complaints in connection with these allegations, one involving the failure to clean the snow/ice that caused his fall and another involving improper medical care for his injuries after his fall. Dkt. No. 20-1.

On January 17, 2023, Plaintiff filed inmate complaint #RCI-2023-825 alleging that, on December 23, 2022, he slipped and fell on "snow covered ice" at 4:30 a.m. on his way to work. Dkt. No. 19, ¶¶18-23; *see also* Dkt. No. 20-2 at 8. Plaintiff complained that the fall could have been "prevented" if institution staff had "employed inmates to rise early and shovel snow as the kitchen workers leave their units at that time." Dkt. No. 20-2 at 8. Plaintiff complained that institution staff had been "negligent" because the snow was neither shoveled nor the ice salted at 4:30 a.m. when he went to work that day. *Id*. He noted that he broke his arm from the incident. *Id*. The Institution Complaint Examiner (ICE) investigated the circumstances and recommended affirming the inmate complaint to acknowledge that "staff witnessed PIOC Tonn slip and fall in the Ozaukee Unit courtyard" and "an incident report had been written." *Id*. at 6. The ICE also noted that Plaintiff received medical care following the incident. *Id*. The Reviewing Authority (RA) accepted the ICE's recommendation and affirmed the inmate complaint on February 17, 2023. *Id*. at 4.

On January 24, 2023, Plaintiff filed inmate complaint #RCI-2023-1253 alleging that he did not get proper medical care after his slip and fall on December 23, 2022. Dkt. No. 19, ¶¶27-34; *see also* Dkt. No. 20-3 at 9, 11, & 14. Plaintiff complained that he told numerous individuals, including correctional staff and the on-call nurse, that his arm was in severe pain, but they refused to listen to him. Dkt. No. 20-3 at 9. Instead, they told him to return to his unit until HSU was

2

"ready for [him]" and he was threatened with a disciplinary ticket if he continued to complain about his pain. *Id*. Plaintiff alleged that he had to wait six hours before he saw a nurse and that, even after it was confirmed via x-ray that he had a broken arm, it generally took too long to get medical care for his broken arm. *Id*. at 11. He also alleged that ibuprofen was not enough for the pain, and he eventually ran out of medication. *Id*. The ICE investigated the circumstances and recommended dismissing the inmate complaint because "what type of specific care or treatment must be offered is a matter of professional medical judgment" that Plaintiff could not direct. *Id*. at 6-7. The RA accepted the ICE's recommendation and dismissed the inmate complaint on March 6, 2023 because "Patient complaint was triaged by nursing staff via on-call nurse who determined same day appointment was appropriate. Patient was seen within 6 hours and referred via state van to a walk-in clinic for x-rays. Patient has since been seen by the RCI provider, nursing, and specialty consultation for further evaluation." *Id*. at 7. Plaintiff did not appeal either inmate complaint to the CCE. Dkt. No. 19, ¶35; *see also* Dkt. No. 25, ¶35.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show

that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Defendants assert that they are entitled to summary judgment because Plaintiff did not complete the exhaustion process by appealing his inmate complaints to the CCE. Dkt. No. 18 at 11-14. The Court agrees. Under the Prison Litigation Reform Act (PLRA), "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "The primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). "To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *Id.* (citing *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019)). "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Wisconsin has established the Inmate Complaint Review System (ICRS) to review inmate complaints. Wis. Admin. Code § DOC 310.05. Under the ICRS, an inmate must attempt to informally resolve the issue with appropriate staff before filing an inmate complaint. § DOC 310.07(1). If those attempts are unsuccessful, an inmate must file a complaint with the ICE within 14 days of the relevant occurrence. § DOC 310.07(2). The ICE must investigate the inmate complaint and "shall either reject the complaint or send a recommendation to the [RA] within 30

days from the date of receipt." § DOC 310.10(7)-(9). The RA shall make a decision within 15 days following receipt of the ICE's recommendation. § DOC 310.11(1). If an inmate is dissatisfied with the RA's decision, he "may appeal the reviewing authority decision to the CCE within 14 days after the date of the decision or if the inmate does not receive a decision 45 days after the date the ICE enters the complaint." § DOC 310.09(1). The CCE must investigate the appeal and "recommend that the [RA's] decision be affirmed or dismissed, in whole or in part, and send its recommendation to the [S]ecretary within 45 days of receipt of the appeal." § DOC 310.12(7)-(9). The Secretary shall make a decision within 45 days following receipt of the CCE's recommendation and that decision is final. § DOC 310.13(1)-(3). Inmates are required to exhaust "all administrative remedies the department has promulgated by rule" before commencing a civil action. § DOC 310.05.

The undisputed evidence shows that Plaintiff did not satisfy exhaustion prior to bringing this lawsuit. Plaintiff's first inmate complaint, #RCI-2023-825, involved negligence in connection with the failure to clear ice/snow on the ground and did not involve the issues raised in this lawsuit (i.e., the delay in providing medical care for his broken arm). Plaintiff's second inmate complaint, #RCI-2023-1253, clearly raises the issues Plaintiff brings in this lawsuit, but Plaintiff admits that he did not appeal either inmate complaint to the CCE, as required by the ICRS. Dkt. No. 25, ¶35. Because Plaintiff was required to <u>complete</u> the exhaustion process by appealing all the way to the Secretary's office to satisfy the PLRA's exhaustion requirement, *see Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), Defendants have met their burden to show that Plaintiff failed to exhaust administrative remedies prior to bringing this lawsuit.

In response, Plaintiff argues that he initially attempted to file his inmate complaints on January 3 and January 6, but the ICE returned those inmate complaints with specific instructions

5

to informally resolve the issue through the chain of command before refiling his inmate complaints. *See* Dkt. No. 23 at 4-5. Plaintiff states that the letters and correspondences he wrote to the Unit Manager, Security Director, HSU Manager, and Warden attempting to informally resolve the issue through the chain of command before filing his inmate complaints function to satisfy his exhaustion requirement because he followed the ICE's instructions exactly. *Id*. However, the letters and correspondences that Plaintiff drafted before he filed his inmate complaints are not relevant to the issue of whether he *appealed* his inmate complaints to the CCE after he received the ICE's decision. In other words, Plaintiff may have started the exhaustion process by following the ICE's instructions exactly, but he never completed the exhaustion process by appealing all the way to the Secretary's office, who makes the final decision. The ICRS clearly directed inmates to appeal all the way to the Secretary's office as a condition of bringing a civil lawsuit, *see* §§ DOC 310.05 & DOC 310.13(1)-(3), and Plaintiff admits he did not comply with the requirement.

Plaintiff argues that appealing to the CCE is permissive (not required) because the ICRS provides that he "may" appeal the RA's decision to the CCE within 14 days. Dkt. No. 23 at 2. While it is true that an inmate who is satisfied with the RA's decision is not required to appeal, an inmate who is dissatisfied with the RA's decision (and plans to file a civil action) is required to utilize "all administrative remedies the department has promulgated by rule." § DOC 310.05. Because Plaintiff was dissatisfied with the RA's decision and sought to file a civil lawsuit to resolve the issue, he was required to use all available administrative remedies, which he did not do.

Finally, Plaintiff argues that Defendants' summary judgment briefing materials were confusing, and a law librarian had to help him identify Defendants' summary judgment brief. *See*

6

Dkt. No. 26. Specifically, it appears that the title of the brief was accidently deleted, and the document simply starts with an "Introduction." *See* Dkt. No. 18 at 1. But Defendants' summary judgment briefing materials otherwise comply with the Civil Local Rules, including containing the text of Fed. R. Civ. P. 56 (c), (d), and (e), Civ. L. R. 56(a), Civ. L. R. 56(b), and Civ. L. R. 7; a memorandum of law; proposed findings of fact; and citations to evidence. *See* Civ. L. R. 56(a)-(b) (E.D. Wis). Additionally, Plaintiff concedes that a law librarian helped him identify Defendants' brief, and he thereafter responded to the brief, so he was not prejudiced by any initial confusion he experienced due to the minor formatting error on page one of the summary judgment brief. The remainder of Plaintiff's arguments involve the merits of his deliberate indifference claim, *see* Dkt. No. 24, but the Court has no judicial discretion to make a merits-based exception to exhaustion. *See Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016). Defendants are therefore entitled to summary judgment based on failure to exhaust administrative remedies and the Court will grant Defendants' motion, deny as moot Plaintiff's motion, and dismiss this case without prejudice.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment based on failure to exhaust administrative remedies (Dkt. No. 17) is **GRANTED**. Plaintiff's motion for summary judgment on the merits (Dkt. No. 32) is **DENIED as moot**. This case is **DISMISSED without prejudice**. The Clerk shall enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 20th day of December, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.